**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DAVONTAE WILLIAMS DORSEY,

Plaintiff, 9:24-cv-1420 (BKS/DJS)

v.

ALBANY COUNTY, New York,

Defendant.

---

**Appearances:**

*Plaintiff Pro Se:*
Davontae Williams Dorsey
11023-508
FCI Lompoc
3901 Klein Blvd
Lompoc, CA 93436

*For Defendants:*
Jeffrey V. Jamison
Albany County Attorney
Philip Banaszek
Assistant County Attorney
112 State Street, Room 600
Albany, NY 12207

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I. INTRODUCTION

Plaintiff pro se Davontae Williams Dorsey brings this civil rights action asserting claims under 42 U.S.C. § 1983 and state law arising from his incarceration at Albany County Correctional Facility ("ACCF"). (*See* Dkt. No. 19). Specifically, Plaintiff brings a municipal liability claim under § 1983 for ACCF corrections officers' alleged use of excessive force against Plaintiff on December 25, 2021, as well as several state law claims. (*Id.*). Defendant filed a

motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 27). Plaintiff opposed the motion, (Dkt. No. 30), and Defendant filed a reply, (Dkt. No. 31). This matter was assigned to United States Magistrate Judge Daniel J. Stewart, who on June 12, 2026, issued a Report-Recommendation, described in further detail below, recommending that Defendants' motion be granted and the Amended Complaint be dismissed. (Dkt. No. 32).

Plaintiff has filed objections to the Report-Recommendation. (Dkt. No. 33). The Court adopts the Report-Recommendation, grants Defendant's motion to dismiss, and grants Plaintiff a final opportunity to amend the complaint.

## II. BACKGROUND

Plaintiff alleges that on December 25, 2021, while housed as a federal pretrial detainee at ACCF, he was "assaulted by other inmates," causing him to fall, "hit his head," and "briefly los[e] consciousness." (Dkt. No. 33, at 1). Plaintiff "suffered visible injuries, including swelling and lacerations to his face and head." (*Id.* at 1–2). When "correctional staff responded to the incident," they "handcuffed" Plaintiff "and slammed his already-injured head into a steel grate." (*Id.* at 2). Plaintiff claims the use of excessive force against him is attributable to actions and omissions by Defendant Albany County and its officials. (*Id.* at 1–2). For a more complete recitation of the facts, reference is made to the Court's summary of the Amended Complaint set forth in the June 30, 2025 Decision and Order, (Dkt. No. 21, at 3–5), as supplemented by the facts described in the discussion below.

## III. REPORT-RECOMMENDATION

Plaintiff has not raised any objections to the background, procedural history, or legal standards as set forth in the Report-Recommendation. (Dkt. No. 32, at 2–6). The Court therefore adopts Magistrate Judge Stewart's summary of the relevant background and applicable law and presumes familiarity with those matters for purposes of this decision. The Court also adopts

those aspects of the Report-Recommendation to which neither party has raised a specific objection, finding no clear error therein. *See Molefe*, 602 F. Supp. 2d at 487.

As relevant here, Magistrate Judge Stewart recommended that the Court grant Defendant's motion to dismiss Plaintiff's § 1983 municipal liability claim for failure to state a claim. (Dkt. No. 32, at 7–11). Magistrate Judge Stewart found the Amended Complaint's allegation of a "single incident [of excessive force] involving unidentified corrections officers" and general allegations of "numerous prior incidents" and an "official policy, widespread custom, or failure to train," both of which lacked factual detail, failed to state a claim for relief under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). (Dkt. No. 32, at 7–11; *see id.* at 9 ("Although Plaintiff alleges that the events were consistent with Albany County policies . . . the Amended Complaint fails to plausibly allege facts showing the existence of a widespread custom or practice [of excessive force against inmates] at the time of [Plaintiff's] assault.")).

Magistrate Judge Stewart also evaluated the news reports[1] Plaintiff relied on in the Amended Complaint in an effort "to provide a sufficient factual basis as to his claim." (Dkt. No. 32, at 9). Observing that two of the news reports were published in February 2025, more than three years after the December 2021 incident at issue here, and that the incidents in those news reports occurred after the alleged incident in this case, Magistrate Judge Stewart concluded they

[1] *See* Tom Eschen, Advocates call for reform after claims of violence at Albany County Jail, CBS6 ALBANY (Feb. 26, 2025), https://cbs6albany.com/news/local/families-allege-excessive-force-at-albany-county-correctional-facility-jail-abuse-corrections-officers-inmates-incarcerated- (last visited Sept. 30 , 2026); Corey James, Protesters allege correction officer misconduct at Albany County jail, SPECTRUM NEWS 1 (Feb. 28, 2025) https://spectrumlocalnews.com/nys/central-ny/news/2025/02/28/albany-county-jail-protest-alleged-abuse.2 (last visited Sept. 28, 2026); Steve Hughes, Commission faults Albany County Jail in two inmate deaths, TIMES UNION (July 10, 2024), https://www.timesunion.com/news/article/state-faults-albany-county-jail-two-inmate-deaths-19562699.php (last visited Sept. 28 , 2026).

were too distant temporally to allow an inference of policy, custom or practice in 2021.[2] (*Id.* at 10–11). Magistrate Judge Stewart further noted that the news reports did not, in any event, "identify specific, factually detailed instances of conduct comparable to Plaintiff's allegations and instead rely on broad, generalized allegations, including advocacy group claims, protest activity, and anecdotal accounts of alleged abuse that have not been adjudicated or substantiated by any finding of liability," and were thus insufficient to allow a plausible inference of municipal policy, custom, or practice. (*Id.* at 11). Finally, Magistrate Judge Stewart recommended that if the Court dismissed Plaintiff's federal municipal liability claim, the only remaining federal claim in this case, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3). (*Id.* at 12–13).

## IV. STANDARD OF REVIEW

The Court reviews de novo those portions of the Magistrate Judge's findings and recommendations that have been properly preserved with a specific objection. *Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 359 (2d Cir. 2025); 28 U.S.C. § 636(b)(1)(C). "A proper objection is one that identifies the specific portions of the [Report-Recommendation] that the objector asserts are erroneous and provides a basis for this assertion." *Kruger v. Virgin Atl. Airways, Ltd.*, 976 F. Supp. 2d 290, 296 (E.D.N.Y. 2013) (citation omitted). Properly raised objections must be "specific and clearly aimed at particular findings" in the report. *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009). Findings and

[2] Magistrate Judge Stewart did not consider the third news story as it "concerned inmate medical care, which is no longer an issue in this matter." (Dkt. No. 32, at 10). *See* Steve Hughes, Commission faults Albany County Jail in two inmate deaths, TIMES UNION (July 10, 2024), https://www.timesunion.com/news/article/state-faults-albany-county-jail-two-inmate-deaths-19562699.php. (last visited Sept. 28, 2026).

recommendations as to which there was no properly preserved objection are reviewed for clear error. *Id*.

## V. DISCUSSION

### A. Legal Standards

#### 1. Motion to Dismiss – Fed. R. Civ. P. 12(b)(6)

As an initial matter, the Court reviews the Amended Complaint using the well-established standard for evaluating Rule 12(b)(6) motions, "accept[ing] as true all well-pleaded factual allegations, draw[ing] all reasonable inferences in the plaintiff's favor, and assess[ing] the complaint to determine whether those allegations plausibly establish entitlement to relief." *Tripathy v. McKoy*, 103 F.4th 106, 113 (2d Cir. 2024); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). In addition, considering Plaintiff's pro se status, the Court construes the Amended Complaint "liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "Nonetheless, a pro se complaint must state a plausible claim for relief." *Id.*

#### 2. Municipal Liability – 42 U.S.C. § 1983

Municipal liability is limited under § 1983 by *Monell v. Dep't of Soc. Servs. of City of New York*. In *Monell*, the Supreme Court found that municipal liability existed "where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). Thus, to successfully state a claim for *Monell* liability, a plaintiff must "make factual allegations that support a plausible inference that the [alleged] constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policy making authority for the municipality."

*Missel v. Cnty. of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009) (citing *Vives v. City of N.Y.*, 524 F.3d 346, 350 (2d Cir. 2008)). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a respondeat superior basis for the tort of its employee." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see also Los Angeles County, Cal. v. Humphries*, 562 U.S. 29, 36 (2010) ("[I]n *Monell* the Court held that 'municipality cannot be held liable' solely for the acts of others, e.g., 'solely because it employs a tortfeasor.'" (quoting *Monell*, 436 U.S. at 691)); *Sims v. City of New York*, No. 15-cv-2485, 2018 WL 11605048, at *4, 2018 U.S. Dist. LEXIS 212966, at *11 (S.D.N.Y. Dec. 17, 2018) ("*Monell* . . . does not conclude that plaintiffs may hold municipalities liable under separate causes of action—there must be an underlying constitutional violation that occurred because of the municipality's unconstitutional custom or policy. . . . When there is no underlying constitutional violation, therefore, there can be no municipal liability under *Monell*." (citing, *inter alia*, *Segal*, 459 F.3d at 219)), *aff'd*, 788 F. App'x 62 (2d Cir. 2019).

The existence of a municipal policy or custom may be plead in any of four ways: "(1) a policy formally adopted and endorsed by the municipality; (2) actions taken by policymaking officials that caused the particular deprivation alleged; (3) practices by subordinate officials that are not expressly authorized but are so widespread and consistent that policymakers must have been aware of them; or (4) a failure by policymakers to train or supervise that amounts to deliberate indifference to the rights of those who come into contact with the inadequately trained or supervised municipal employees." *Crawley v. City of Syracuse*, 496 F. Supp. 3d 718, 729 (N.D.N.Y. 2020) (internal quotation marks omitted) (citing *Deferio v. City of Syracuse*, 770 F. App'x 587, 589 (2d Cir. 2019) (summary order)). "Once a plaintiff has demonstrated the existence of a municipal policy, a plaintiff must then establish a causal connection, or an

'affirmative link,' between the policy and the deprivation of his constitutional rights." *Deferio*, 770 F. App'x at 590 (citing *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)). "Boilerplate statements" that county employees were acting in accord with a municipal policy, with no facts to support those statements, are not sufficient to support a *Monell* claim. *See Brown v. Oneida Cnty*., No. 15-cv-0849, 2016 WL 4275727, at *4, 2016 U.S. Dist. LEXIS 106836, at *12 (N.D.N.Y. Aug. 12, 2016). As reflected below, Plaintiff proceeds here on widespread practice, failure to supervise, and failure to train theories of municipal liability.

**B. Objections**

**1. Single Isolated Incident**

Plaintiff objects to Magistrate Judge Stewart's finding that the Amended Complaint alleged only a single incident of excessive force involving ACCF corrections officers and that it failed to allege facts suggesting that the use of force resulted from an Albany County policy, custom, practice or failure to train. (Dkt. No. 33, at 4). In support of his objection, Plaintiff cites the allegations in the Amended Complaint that there were "numerous incidents of violence, assaults, inadequate supervision, excessive force by staff, and deficient medical care" at ACCF "prior to and around his assault" and that "those incidents were known or should have been known to Albany County policymakers." (*Id.*; *see also* Dkt. No. 19, ¶ 28).

"While plaintiff need not conclusively prove the existence of a policy at [the dismissal] stage, he must 'allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists.'" *Innamorato v. Cnty. of Suffolk*, No. 23-cv-06573, 2025 WL 2605604, at *7, 2025 U.S. Dist. LEXIS 175708, at *18 (E.D.N.Y. Sept. 9, 2025) (quoting *Tieman v. City of Newburgh*, No. 13-cv-04178, 2015 WL 1379652, at *13, 2015 U.S. Dist. LEXIS 38703, at *38 (S.D.N.Y. Mar. 26, 2015)). However, the Amended Complaint fails to allege any factual details about the "numerous incidents of violence" at ACCF, such as dates,

individuals involved, or what occurred during each incident. Thus, Plaintiff's claim of widespread practice is premised on little more than the alleged use of excessive force against him in December 2025, which is insufficient. *See Innamorato*, 2025 WL 2605604, at *7, 2025 U.S. Dist. LEXIS 175708, at *18 (finding the plaintiff's allegations regarding constitutional deficiencies at his own retention hearing and threadbare allegations of similar due process deprivations at other retention hearings were insufficient to plausibly allege the existence of a municipal policy or custom "based on a consistent and widespread practice of which a supervising policy maker should have been aware"). And without factual detail about the other "numerous incidents, Plaintiff's allegations are "precisely the type of conclusory allegation courts have found insufficient to withstand a motion to dismiss" a municipal liability claim under *Monell*. *See Innamorato*, 2025 WL 2605604, at *7, 2025 U.S. Dist. LEXIS 175708, at *18–19 (citing *Cipollini v. City of New York*, 758 F. App'x 76, 79–80 (2d Cir. 2018)); *Duncan v. City of New York*, No. 11-cv-03826, 2012 WL 1672929, at *2–3, 2012 U.S. Dist. LEXIS 67208, at * 6 (E.D.N.Y. May 14, 2012) (concluding that "boilerplate statements" that the defendant had a "custom and policy of making illegal and false arrests" was "insufficient to state a claim of municipal liability under *Monell*"). Accordingly, the Court finds no error in Magistrate Judge Stewart's conclusion that the Amended Complaint contained allegations regarding a single use of excessive force.

**2. Analysis of Other Municipal Liability Theories**

Plaintiff also objects to the Report-Recommendation on the ground that it failed to meaningfully analyze the failure to supervise and failure to train theories of municipal liability. (Dkt. No. 33, at 9–11). Under the failure to supervise or train theories, "a plaintiff must show that 'the municipality failed to adequately supervise [or train] its employees (thereby implicitly encouraging or ratifying their unlawful conduct) . . . [and] that such a failure . . . was tantamount

to deliberate indifference.'" *Buari v. City of New York*, 530 F. Supp. 3d 356, 400 (S.D.N.Y. 2021) (citing *Alwan v. City of New York*, 311 F. Supp. 3d 570, 578 (E.D.N.Y. 2018)); *see City of Canton v. Harris*, 489 U.S. 378, 390 (1989) (failure to train). As the Second Circuit has explained, a municipality's "failure to train its subordinates satisfies the policy or custom requirement" under *Monell* "only where the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) (citing *Harris*, 489 U.S. at 390). "An obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Vann v. City of New* York, 72 F.3d 1040, 1049 (2d Cir. 1995). "That is, if municipal liability is premised on a failure to investigate and therefore a failure to supervise, the critical inquiry is not whether the complaints resulted in a finding of guilt, but rather whether the municipality conducted a sufficient investigation of the complaints." *Manigault v. City of New York*, No. 11-cv-4307, 2012 WL 13049173, at *8, 2012 U.S. Dist. LEXIS 205005, at *21 (S.D.N.Y. Apr. 19, 2012).

Here, the Amended Complaint does not identify ACCF's practice concerning the use of force against inmates or allege facts showing how it should have been obvious to a policymaker that the practice would result in the use of excessive force against Plaintiff. *See Reynolds*, 506 F.3d at 192; *see also Vasquez v. City of New York*, No. 20-cv-4641, 2023 WL 8551715, at *6, 2023 U.S. Dist. LEXIS 219614, at *17 (S.D.N.Y. Dec. 11, 2023) (dismissing failure to supervise claim where the plaintiff did "not make any 'specific factual allegations regarding any failures to investigate complaints or discipline officers involved,' which 'dooms [his] claim'" (quoting

*Taranto v. Putnam Cnty.*, No. 21-cv-2455, 2023 WL 6318280, at *20, 2023 U.S. Dist. LEXIS 174333, at *63 (S.D.N.Y. Sep. 28, 2023)).

### 3. Consideration of News Reports

Plaintiff objects to Magistrate Judge Stewart's conclusion that the three news reports cited in the Amended Complaint are insufficient to support a municipal liability claim. (Dkt. No. 33, at 7–9).

"Municipal liability can also be based on a showing of 'deliberate indifference' to a recurring situation likely to result in a constitutional violation." *Buari*, 530 F. Supp. 3d at 399. "In such circumstances, the policy or custom requirement is satisfied 'where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions.'" *Id.* (quoting *Reynolds*, 506 F.3d at 192).

Here, the first report discusses a letter sent by advocacy organizations to Albany County Sheriff's Department "urging for increased transparency and accountability" at ACCF "after allegations surfaced of individuals being abused by correction officers while in custody, resulting in the need for medical attention." Tom Eschen, Advocates call for reform after claims of violence at Albany County Jail, CBS6 ALBANY (Feb. 26, 2025), https://cbs6albany.com/news/local/families-allege-excessive-force-at-albany-county-correctional-facility-jail-abuse-corrections-officers-inmates-incarcerated- (last visited Sept. 30 , 2026). The report quotes the spouse of an inmate who stated that her husband had been punched, kicked, and stomped on by corrections officers and suffered "eight of his dreads being taken out," a chipped tooth, a blood clot, and a fractured jaw. *Id.* The second report concerns a protest outside the Albany County Sheriff's Office "in response to allegations of violence and

misconduct by corrections officers," calling for "independent oversight and accountability for jail staff." Corey James, Protesters allege correction officer misconduct at Albany County jail, SPECTRUM NEWS 1 (Feb. 28, 2025) https://spectrumlocalnews.com/nys/central-ny/news/2025/02/28/albany-county-jail-protest-alleged-abuse.2 (last visited Sept. 28, 2026). The third report concerns the alleged overdose deaths of two inmates at ACCF in 2021 and 2022. *See* Steve Hughes, Commission faults Albany County Jail in two inmate deaths, TIMES UNION (July 10, 2024), https://www.timesunion.com/news/article/state-faults-albany-county-jail-two-inmate-deaths-19562699.php (last visited Sept. 28, 2026). As Magistrate Judge Stewart recognized, the first two news reports (dated February 2025) post-date the alleged use of excessive force against Plaintiff (in December 2021) by several years. (Dkt. No. 32, at 9–10). Even if there was a temporal connection, the news reports are too vague to support a plausible inference that Defendant tacitly authorized a policy of excessive force at inmates at ACCF. *See Perez v. New York City Dep't of Corr.*, No. 10-cv-2697, 2012 WL 3704744, at *3, 2012 U.S. Dist. LEXIS 121440, at *7–8 (E.D.N.Y. Aug. 27, 2012) (finding the plaintiff's reliance on "on unsubstantiated and general allegations in newspaper articles and a blog post in an effort to suggest that the conduct described therein did, in fact, occur, and in the manner recounted" was insufficient to support claim of custom or policy of using gang members as "enforcers" on Rikers Island, noting that "even assuming these incidents occurred," the plaintiff did not allege any municipal defendant "knew about the alleged incidents, or how and through whom these entities may have responded to the alleged incidents").

In addition, the Amended Complaint does not allege what type of supervision or training may have resulted in the use of excessive force against Plaintiff, or how the absence of such training resulted in a deprivation of his federal rights. *See Vasquez*, 2023 WL 8551715, at *7,

2023 U.S. Dist. LEXIS 219614, at *19 (dismissing failure to train claim where the plaintiff did "'not identify procedural manuals or training guides, nor [does he] highlight relevant particular aspects of police training' regarding excessive force, as would be required to plead a failure to train claim" (quoting *Marte v. New York City Police Dep't*, No. 10-cv-3706, 2010 WL 4176696, at *3, 2010 U.S. Dist. LEXIS 109932, at *9 (S.D.N.Y. Oct. 12, 2010)).

The news reports do not support a failure to train or failure to supervise theory of liability, either. Even if Defendant failed to adequately investigate the allegations in the first two news reports, because there are no dates regarding the allegations of abuse and force, it would be speculative to infer Defendant was aware of an obvious need for better supervision or training at the time of the alleged use of force in this case. Further, as to the third news report, Plaintiff fails to allege any facts suggesting any ground on which to connect inadequate supervision or training regarding drug overdose incidents to a use of force incident. Accordingly, Plaintiff's objection is without merit.

Thus, the Court has no basis to plausibly infer from the allegations in the Amended Complaint that excessive force was used against Plaintiff as a result of a failure by policymakers to train or supervise subordinate officials regarding the use of force against inmates.

**4. Dismissal Prior to Discovery**

Plaintiff objects to the recommended dismissal of his *Monell* claim on the ground that the Report-Recommendation improperly requires him to plead "discovery-level" facts concerning prior incidents, internal complaints, training materials, disciplinary records, or policymaker communications. (Dkt. No. 33, at 6–7). As Plaintiff correctly notes, (*see id.*, at 7), federal pleading standards do not prevent a plaintiff from "pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant," *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). Even so, a plaintiff must allege facts

pleading a facially plausible claim of municipal liability. *See Vassallo v. City of New York*, No. 15-cv-7125, 2016 WL 6902478, at *14, 2016 U.S. Dist. LEXIS 162704, at *41–42 (S.D.N.Y. Nov. 22, 2016) ("To state there is a policy does not make it so. And while a plaintiff need not assert the allegations in the initial complaint with a level of specificity only made possible through discovery," additional facts for Plaintiffs "official policy" *Monell* allegations are required. (quoting *Betts v. Shearman*, No. 12-cv-3195, 2013 WL 311124, at *16, 2013 U.S. Dist. LEXIS 11139, at *48 (S.D.N.Y. Jan. 24, 2013)). Accordingly, Plaintiff's objection is without merit.

Accordingly, the Court agrees with Magistrate Judge Stewart that the Amended Complaint fails to state a claim of municipal liability under § 1983.

### 5. Dismissal of State Law Claims

Plaintiff objects to Magistrate Judge Stewart's recommendation that this Court decline to exercise supplemental jurisdiction over any remaining state law claims in the event Plaintiff's federal claim is dismissed. (Dkt. No. 33 at 12–13). Plaintiff does not dispute this recommendation as a matter of law but asserts that the Court should first consider whether diversity jurisdiction under 28 U.S.C. § 1332 might provide an independent basis for jurisdiction. (*Id.* at 12). Section 1332 grants the federal courts jurisdiction over civil actions where the amount in controversy exceeds $75,000 and the suit is between "citizens of different States" or "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(1)–(2); *see also Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 117–18 (2d Cir. 2014) (stating that Section 1332 "requires 'complete diversity,' *i.e.* all plaintiffs must be citizens of states diverse from those of all defendants" (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005))).

As Plaintiff notes, Albany County is treated as a citizen of New York. (Dkt. No. 33, at 12 (citing *Moor v. Cnty. of Alameda*, 411 U.S. 693, 717–21 (1973)). Although Plaintiff's current address reflects his incarceration in a federal correctional institution in California, "courts have held that the domicile of a prisoner before he or she was imprisoned is presumed to remain his or her domicile [for diversity jurisdiction purposes] while he or she is in prison." *See Collazo-Portillo v. D'Avirro*, No. 06-cv-2028, 2007 WL 1614527, at *3, 2007 U.S. Dist. LEXIS 39914, at *7 (D. Conn. May 29, 2007) (citing cases). Plaintiff does not provide any information as to his domicile prior to incarceration. There is, therefore, no basis for finding diversity jurisdiction applies in this case. Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

## VI. LEAVE TO AMEND

Plaintiff contends that in the event the Court agrees the Amended Complaint "lacks detail, the proper remedy is leave to amend, not dismissal." (Dkt. No. 33, at 11). Plaintiff asserts that he believes "better pleading could cure the concerns identified in the R&R" and that he "could provide more detail concerning the alleged prior and contemporaneous incidents, the public reports, the Commission findings, the patter of jail violence, the history of excessive force complaints, Albany County's notice, and the training or supervision deficiencies that caused his injuries." (*Id.* at 11–12).

"Generally, leave to amend should be freely given, and a pro se litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir 2000) (internal quotation marks and citations omitted). A pro se plaintiff should have at least one chance to amend if "a liberal reading of the complaint gives any indication that a valid claim might be stated." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d

Cir. 2014) (citation omitted). However, a court may deny even a pro se plaintiff leave to amend when amendment would be futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Although Plaintiff has already had at least one chance to amend in this case, in light of Plaintiff's representations and status as a pro se litigant, the Court will provide Plaintiff one final opportunity to file an amended complaint. Any amended complaint will entirely replace the existing amended complaint and must be a wholly integrated and complete pleading not combined with any other document. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). It also must not rely upon or incorporate by reference any pleading or document previously filed with the Court, including the existing complaint. Instead, the amended complaint itself must contain all the specific factual allegations Plaintiff wishes the Court to consider in connection with his state and federal claims.

## VII. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Magistrate Judge Stewart's Report-Recommendation (Dkt. No. 32) is accepted as set forth above; and it is further

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 27) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's *Monell* claim is **DISMISSED without prejudice** for failure to state a claim and Plaintiff's related state law claims are **DISMISSED without prejudice** as the Court declines to exercise supplemental jurisdiction; it is further

**ORDERED** that Plaintiff may file a second amended complaint asserting the *Monell* claim, as well as any related state law claims, within **thirty (30) days** of the date of this Order, in accordance with the instructions set forth above; and it is further

**ORDERED** that, if Plaintiff fails to file an amended complaint within that time, the Clerk is respectfully directed to dismiss the amended complaint, (Dkt. No. 19), enter judgment and close this case without further order; and it is further

**ORDERED** that the Clerk serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 29, 2026
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge